Our second case is number 20-13260, Sean Garrison v. United States, I'll give you all a chance to get settled. All right, Mr. Feldman, you have reserved three minutes for rebuttal. Please proceed. May it please the court. Good morning, Your Honors. Sam Feldman for Appellant Sean Garrison. At counsel table is my colleague Matt Richard. The court should reverse the denial of Mr. Garrison's 2255 motion because the Stromberg error was not harmless and procedural default does not bar relief. What is the standard that you apply to reach that conclusion? For the merits, it's the Brecht harmless error standard and for procedural default, instead of whether the error is jurisdictional, we're going to focus on cause and prejudice. Would you like me to address that? Are you going to abandon the issue of jurisdiction? We are not going to abandon it. We're at least going to preserve it. I mean, even in your brief, you say that you were bound by Granda on cause. I mean, you just want us to, you want to go to en banc court, which you may be entitled to do, but even your brief agrees that on causation you don't win under our precedent. Your Honor, I can point you to the footnote. I'm aware of the footnote. Right. The distinction I would like to make is that in Granda, that panel only considered one of three scenarios established by Reed, each which independently can allow a movement to show cause. The problem is, as you know, under our prior panel precedent rule, we do not, there's no overlooked argument or overlooked precedent exception to our prior panel precedent, as you know. I understand that. Right. We're not asking this court to overturn Granda. The prior panel rule still does not change the fact that this court's first duty is to always follow the dictates of the U.S. Supreme Court, as this court recognized in Contreras. I'm not even sure Contreras is good law, given that what we've said, our en banc court has said numerous times, but even if it were, we read Reed. It's not like we ignored Reed. So we are, our prior panel precedent rule says that we take the gloss of what the Granda court said in Reed to us, and so I'm just, I'm having a hard time getting past that, and why I think maybe you should take up Judge Antoon's invitation to talk about the jurisdictional aspect, because I think you're gonna have a hard time getting over that part of it from, from, I can only speak for myself, I haven't talked to the other panel members, but I just don't see a way that we can get around that, even if we misapplied, misread, got Reed completely wrong, and you're completely right. Understood, Your Honor, but if the Granda panel only applied the third scenario in Reed, then our position is that this court still has an opening to grant relief for Mr. Garrison without flouting Granda by ruling that the first and second Reed scenarios apply here, and I'm happy to get into the details. First, I want to say that on the issue of whether the error is jurisdictional, in light of this court's recent decisions in Roselio, Williams, and Wright, we are not going to focus on jurisdiction because we're not contesting the validity of all the potential underlying predicates, specifically the drug offenses, which on this record, our jury most likely did not rely on. And that's gonna overlap with the merits analysis. But in Reed, the Supreme Court established these three scenarios. The first is where the Supreme Court explicitly overrules its earlier decision. The second is where the Supreme Court overturns a longstanding practice that a near unanimous body of lower court authority has approved. And the third scenario is where the Supreme Court disapproves of a practice that it previously had sanctioned. Before Johnson, Davis, all these developments in the law, courts were categorically rejecting void for vagueness challenges to the residual clause of 924C. Counsel, I'm sorry. Page four of your gray brief, the one you wrote. The 7th and 10th circuits have held under Reed, the Supreme Court's decision in Johnson was a clear break from the past, providing cause to excuse procedural defaults, C. Cross and Snyder. Footnote, in Granda, this court disagreed, finding cause to excuse the procedural default only in cases where the Supreme Court's precedent expressly prohibits a movement from raising a residual clause challenge. However, for the reasons stated above, this court ought to revisit that holding. Yes, Your Honor, because we also respectfully disagree with the Granda panel's interpretation of the pertinent Supreme Court cases and application of the third Reed scenario. And our sister circuits, the 10th, 7th, 9th, and 3rd, that was a bit out of order, but they agree that Reed is still good law. Bousley did not overrule Reed sub salento. For example, there's an older Supreme Court case, Agostini versus Felton. And in that case, the Supreme Court said that the federal circuits should avoid interpreting that the high court has overturned itself unless it has explicitly said so, which has not happened here. In Doe, the third circuit said that the government argues that Doe defaulted his claim by not raising it on appeal when the legal basis did not exist. We disagree squarely. In English, the 9th circuit excused a default because it would be pointless and indeed wasteful to require a futile objection that was foreclosed by a solid wall of circuit authority. So there's also a policy point here that requiring defendants to bring the futile challenge is wasteful and bad for the practice. In Snyder, the 10th circuit agreed and nobody could have reasonably anticipated Johnson. The 10th circuit also said that Johnson constitute a new constitutional principle. In canon, this court said that Davis announced a new substantive constitutional rule in its own right, separate and apart from, albeit primarily based on, Johnson and DeMaia. So- Considered all of that in Granda, all of it. Your Honor, the Granda panel analysis was limited. The Granda panel only dealt with the third Reed scenario, and it did not explain why it limited its analysis to that third scenario. Granda's- It explained why it believed Boosley did overrule or did modify Reed. It explained why Cannon was not controlling. I mean, it dealt with all of these things. I understand you disagree. And again, you're going to have an opportunity to argue to the en banc court. But I'm just having a hard time of getting around our prior panel precedent here. I think jurisdictionally would be the way to do it. And that's why we're not abandoning our jurisdictional argument. In an earlier case, in terms of the dynamics of the prior panel rule, there was the Cannon and the Hamoud case. And even you argue, both in the initial brief and later, that those are procedurally very different. They come with all the caveats that we are not ruling on the merits because they're done under applications for permission to file seconder successes. So those are not rulings on the merits. And if they are, then why don't we consider the dicta in Cannon, which essentially says that you can consider inextricably intertwined, and Mr. Cannon probably didn't even have a claim, which is what the district court did here. Can you repeat the question for me, please? Sure, so it's a couple part question, but those cases that you're relying on Hamoud and Cannon are in a very different procedural context, correct? That's correct. Okay, so that's one part of the question. The second part is, you argue in your own briefs that we shouldn't consider the dicta in Cannon, for example, because they're in a different procedural context. They were not a ruling on the merits, right? Yes, Your Honor, but if we're that concerned about the procedural posture, why don't we go all the way back to Bousley, which addressed a different scenario where a claimant failed to raise a claim that was a subject of a circuit split on direct review. We're on collateral review here. Counsel, I'm not saying that you're not wrong. This is the issue here. Everything you say may be absolutely correct about Reid applying, Bousley not overruling it, us misreading Bousley. All of it may be right, but that's not the issue. The issue is we have an obligation to bind ourselves to prior panel precedent. Direct issues that were decided, even if it overlooked very good arguments that you're making. And I'm just having trouble getting past that. Understood. Can I briefly touch on the merits? Please. Okay. You don't have the correct issue. So first of all, in the Davis opinion, Justice Gorsuch, who wrote for the majority that found that the residual clause of 924C was unconstitutionally vague, said that in our republic, a speculative possibility that somebody has by taking their liberty. Here, there's only a speculative possibility that Mr. Garrison's 924C conviction rests on a constitutional predicate. Further, the record- Both the district court and Granada in a similar factual situation found that because of the nature of the crime, a conviction on one necessarily means there is conviction on the other. In fact, in all cases, we know there was because the jury in fact convicted on the substantive drug offense as it did on the conspiracy to commit object robbery offense. I take your point, Honor. The Brecht Harmless Error Standard is a review of this record and is case specific in that regard. It is. The universe of, I think this is a good opportunity to distinguish our co-defendant Martin's case by talking about the quantity and quality of evidence presented against each defendant. Your argument's an interesting one on that, but it seems to me it's sort of besides the point on the inextricably intertwined. In other words, you may be right that just as a factual matter, he's less guilty and less culpable than his co-defendant. I probably agree with you. But I don't see how he's any less inextricably intertwined. Here's an example. First of all, we need to be thinking for the standard of prejudice, whether the error substantially influenced the jury's verdict in a way that's detrimental to Mr. Garrison. Isn't it whether we have grave doubts about it, having reviewed the record? There's a few ways I think that the courts have articulated the prejudice standard, and I think that fits the bill too. Our jury instructions called for a single predicate. On our record, the prosecutor clearly tied the firearm to the Hobbs Act. All right, I want to break that up. So in Parker, I read the jury instructions as being almost identical. Even the emphasis seems to be the same jury instructions that were given here. Is that true or not true? Your Honor, we disagree. We think that our jury instructions were very clear that- Is it the same as Parker, almost word for word? I am not exactly sure how close it is word for word, but I do remember there were differences. All right, and then the second thing you said is the closing argument. So I went back and looked, because I thought that's an interesting point. Let me take a look at the closing argument there. In the closing, the government also argued, in addition to the point that you raised, quote, and this is at 223-1 at page 48 of the transcript, the defendants did not think committing the home invasion robbery to steal 15 kilos of cocaine would be easy. The defendants planned to use not one, not two, but three guns, all of very large caliber, in other words, big bullets, 42 of those bullets. One of those guns having a sawed off or short barrel. If the home invasion robbery to steal 15 kilograms of cocaine was so easy, as defense counsel claimed, why did the defendants bring with them so much firepower? Isn't that connecting the guns to the drugs? There is an argument to be made that there is an attenuated connection, I think, there between the guns and the drugs. But you can't say that the government didn't make the connection in closing, which is what you would argue. I can say that the government unequivocally emphasized the connection between the firearm and the robbery over the firearm and the drugs in terms of the harmless air standard. We're thinking about what the jury was concluding as they're receiving the presentation given to them. The story that the government told was that the guns were used to further the robbery. Few quick quotes, and I know I'm over my time. This is a robbery. The more guns, the more firepower, the more emboldened the defendants become. Two more, I'm done. The guns of one is helping the commission of the robbery by the other person. You understand? All you have to do is find that one of these guns, not all three, but just one of these guns was used to commit the robbery. Last one, Chung, Garrison, and Martin, all were going to possess one gun during the commission of the robbery. This is a robbery. We've reserved three minutes for rebuttal. Thank you. Thank you. Ms. Schall? Good morning. May it please the court. Assistant United States Attorney Shannon Shaw on behalf of the United States. The court should affirm the district court's denial of appellant's 2255 motion for the first reason that the appellant procedurally defaulted. We can't demonstrate cause, prejudice- Can you talk about the jurisdictional issue? I don't see a way around, I'm only speaking for myself, I don't see how there's a way around the causation standard with regard to Granada. So the argument that they make in the reply brief is, this is a jurisdictional error and procedural default doesn't apply, which is an interesting point. So in St. Hubert, which I think some of it still exists even after the Supreme Court has knocked parts of it down, we said that where the predicate for the 924C is something that no longer could apply under anything other than the residual clause, that that indictment essentially has a jurisdictional defect. Why would that not apply here? Yes, your honor. So St. Hubert is different because the only predicate was no longer valid. I agree. Here, it's undisputed. Appellant's counsel has said, we agree the drug trafficking offenses, of which he was convicted of two, still apply and are still valid. Was this charged as an and or an or? It was charged as an and. Doesn't that hurt you a little bit? In other words, if you charge it, and I get why government does this, I've been there, you charge as an and, you argue the jury as an or. But if you charge as an and, aren't you stuck with you have to prove all three? And if one of them is illegal, then in other words, they're in triplicate and one of them is knocked down, then why is that not problematic? So the indictment in Parker, which was a published decision, looked exactly the same. I read the jury instructions. We didn't reach the jurisdictional issue. In fact, we didn't reach procedural error in Parker. Maybe that's why, by the way. I would actually argue that the district court or the appellate court, even if it's not raised by appellant counsel, always has to consider jurisdiction. The court always needs to consider jurisdiction. We have, there's tons of case law, going back to Chief Justice Marshall, saying that we don't use drive-by jurisdictional rulings. In other words, yes, we hope that we all do our job and look at jurisdiction. But where we're silent on jurisdictional issues, we don't assume that there's a jurisdictional holding. And frankly, that's a good law. And that goes all the way back to the 1820s. So I don't think we can assume that. So don't, that's not your best argument. Then I would direct the court to the reasoning and the right decision. I know Judge Branch is very familiar with that decision. She was on the panel. It's a great decision. But the reason that we like it here is because, again, we have the same indictment. We have the same jury instructions. We have the same district judge, who actually is also the same district judge in Parker. And in all of these cases, where we look at the jurisdictional issue, it's because there are still valid predicates. So this is what distinguishes this case from St. Hubert. We have two valid predicates. And it's clear 11th Circuit law that as long as the indictment charges a valid offense under federal laws, then the court has subject matter jurisdiction. Can we avoid this whole issue by just ruling or focusing on Brecht as the court did in Parker? You could. And that's what the court did in Martin as well, which is Mr. Garrison's co-defendant. Right. So where does that leave us for Brecht? So your opposing counsel makes some interesting arguments. They argue really three things I think are different. One, that the statute only speaks of singular offenses and not, and so we can't consider the other offenses in doing so. Second, he argues the closing argument issue that he brought up here. And third, he argues about the jury instructions, that the jury was only told to focus on one and so had to make a finding as to one. I'll take each of those arguments in turn. I think I have that right. Yes. He also makes a sufficiency that the evidence is just different than Parker and Granda. Right. So I'll start with the bottom. I'll start with the sufficiency. We can see clearly in government's trial exhibits 9C and 34C, which were transcripts of the recorded meeting between Garrison, Martin, and the undercover, that Garrison was intimately involved in the planning and execution of this stash house robbery. Now was Martin perhaps more culpable? Certainly. But that's why he got a role enhancement at the district court. Because every conspiracy has managers, has leaders, and then it has people who sit there in a conference room and agree and go along with it. They're not the loud voice. They're not the one constantly texting the undercover. But they're intimately involved in it. Garrison actually was armed. The other two guns were in the car. Garrison was the one who carried a firearm. Garrison came to the meeting dressed in a black hat and a black shirt. He was in the car with additional guns, with gloves, with bags, with all the tools to commit a robbery. Didn't he suggest with the others on how best to approach the house or how best to undertake it? He did, Your Honor, and that's in Government Exhibit 34C. He said, we can go through a side door. He also was closely listening. Even if he didn't talk as much as Martin, because we see it at page eight of Government Exhibit 34C, Garrison chimes in to say, wait, didn't you say there were two guards when the UC referenced only one guard? So we know that Garrison was paying close attention, both at the April 13th meeting and he was paying close attention at the June 5th meeting. So we see with his actions, with his words, with his clothing, that he was there for the purpose of committing a robbery of 15 kilograms of Colombian cocaine. The evidence is more than sufficient. Whether Martin had more conversations with the UC is immaterial. Well, it's not really, I mean, this goes to the question I asked your opposing counsel, it's not really a sufficiency issue. It's not whether there's more or less evidence against one. It's, is it less inextricably intertwined? In other words, is there a way that the jury could have found one without finding the other? Isn't that really the question? Yes, Your Honor, because of course, the standard under BRAC, the court must determine whether the invalid theory, the Hobbs Act robbery, had a substantial and injurious effect. And I think here, if I talk about the prosecutor's arguments, both in opening statement and in closing statement, we can see that for Garrison, the evidence is inextricably intertwined. And when the government is referencing robbery, they're meaning the robbery of a stash house to steal cocaine. It always goes together. And in fact, I looked at docket entry 233 where the closing argument is found and docket entry 229 where the opening is found. I counted at least 11 times in the government's closing argument where the trial prosecutor used that whole phrase to rob a stash house of cocaine. Or to commit the home invasion robbery to steal 15 kilograms of cocaine. And in the opening, the government again repeatedly references the robbery as the robbery to steal the cocaine. Because of course, they have to steal the cocaine and sell it to make money. This isn't a robbery of a house where they're expecting to find a lot of cash. And then they'll pick up some cocaine on the side. They are robbing us for the purpose of getting cocaine. And the reason to get the cocaine is to sell the cocaine and make money. In fact, the government concludes its opening statement by connecting the gun to the robbery of the cocaine. The prosecutor concludes saying, these defendants would have, if they could have, committed an armed robbery to steal 15 kilograms of cocaine from a stash house. We see that at page 218 in docket entry 229. So the argument that the government was asking the jury to only convict on the 924C based upon the robbery simply isn't supported by the government's words, both in opening and in closing statements. We see repeatedly how inextricably intertwined the gun is with the robbery of the cocaine. Then the next aspect I think the court was asking about were the jury instructions. Am I right or wrong that they're the same instructions that were issued in Parker? I assume by your statement that it's the same judge that they likely were the same instructions. Yes, your honor. Did they include the instruction, did the judge So interestingly, different points of the jury instructions sometimes use and and sometimes use or. There's an instruction that deals with it generally. Right, so in the introduction to the offense instructions, it uses the and, which is the same and that's in the indictment. Judge Antoon is asking, so you give the offense specific instructions, that's what you're talking about. Judge Antoon is asking, when you give the general instructions, sometimes you give an instruction about and and or and how they interact with each other. That's one of the sort of, I think it's in the general instruction section. Is that what you're referring to, Judge Antoon? Yes, exactly. I don't recall that off the top of my head. I know it is a pattern jury instruction, and so that's often included. And the jury instructions themselves use and in some places and use or in some places when talking about the 924C. And I would encourage the court to use the reasoning that just because they could have found on one predicate offense, didn't mean they couldn't find on all predicate offenses. I think here the record supports the strong inference that the jury, in fact, found that all of the predicates had been committed. That's why they found. It's also not even the standard. In other words, the standard is, do we have grave doubts that they couldn't have found as to one of the legitimate predicates, right? That's correct. In other words, the only way we would be able to reverse under Brecht, as read by Granda is, and Parker, is that if the jury could only, if we were convinced that really the jury could only have found or almost only could have found on the robbery and not on the drug offenses. Is that correct? Yes, your honor. So in other words, as long as the jury could have, and we have no doubts about that it could have done that, then even if the jury was instructed as to one, then that still wouldn't be an issue. Is that the way that you're looking at it? Yes, your honor.  No, no, go ahead, sorry. I was going to say, I think that comports with all of the decisions that this court has issued in the past year and a half post-Granda. So, we've been talking about Granda, Stromberg, all of that here today. But below, you did argue, and you preserved in your brief in a footnote, the Beeman, the initial threshold that Beeman is providing that. You are still relying on that, and that would be a question, you reach the Beeman question before you reach the merits. Correct? Yes, your honor, and Beeman is of course a standard the district court relied upon. We think that the court doesn't need to reach Beeman because of the procedural default and the lack of an heir under that. I want to dig into that because I want to get to what Judge Branch is asking. Are you saying, is it the government's position that Beeman and its test apply in a Davis claim? Yes, your honor. How could that be? In other words, as I understand Beeman, and correct me if I'm wrong, Beeman says that district judge, you were the sentencer and were silent as to under which predicate you were doing so. Because you were the finder of fact, we are sending this back to you to be able to find if the predicate conviction you were sentencing under was under the elements clause or one of the other legitimate or still valid clauses. Or if it was only under the residual clause. Is that, that's Beeman, right? Your honor, I read the Beeman decision to affirm the denial of the 2255 because the petitioner didn't meet his burden. Right, I agree with you. Under 2255, the petitioner has the burden. I don't think anyone really disputes that. But there's a second question in Beeman about a finding of historical fact. That's what the whole long footnote is about. So the reason we're doing this is the district court is sending, we're sending these back. So the way it works is, you make a Johnson claim. There's one valid predicate and a valid one. We can't make head or tails of it. So we grant the application, send it back to the district court. The district court then says, I'm gonna look at the record to see if there is an indication either as a matter of case law or as a matter of historical fact that I relied only on the residual clause. And some district courts, as you know, have said, I was the sentencer at the time. And I know for a fact that I was only relying on the residual clause, and there's no case law that compelled one or the other. And so I think that there is a constitutional error here. Do I have anything wrong so far? Okay, so I'm confused as to how that part of Beeman, not the burden of proof, which is clear. But now that part of Beeman could apply when you're making a call about what a jury did, cuz that's really our question here. What did the jury rely on? Did it only rely on the residual clause predicate, here the conspiracy to commit Hobbs Act robbery, or did it rely maybe on something other than the residual clause predicate? How could that Beeman historical fact analysis, which really just gets in the mind of the same sentencer who's making the finding, apply in this context? I think it applies because it goes to whether the offenses were so inextricably intertwined that you can tell from the record. And that's what we have in this case. With a robbery of a stash house, it's so inextricably intertwined. It's the same unitary scheme of facts, the same date, the same time, the same actions, that the court's able to make that kind of analysis. Well, I don't disagree in terms of making the Breck decision. But here, the way that we've interpreted, and again, whether it's right or wrong is besides the point. But the way we've said this is, there's a Stromberg error. A Stromberg error occurs where there are multiple predicate offenses, there's a general verdict, we can't tell. That's a Stromberg error. And then the question is, what do we do with it? So in my mind, the question is, do we apply sort of the Beeman analysis? Does the judge sort of make a, here's what happened as a matter of historical fact determination? Or do we say, under Brecht, I need to find if it's substantial or injurious, there was a substantial injurious error such that it infected here. And so, whether there's a grave doubt of whether the jury only relied on this, or could have relied on some other thing. And they may be related, but those seem to me to be a little different. I think HedgePath really directs the court on the standard to use. And in that HedgePath, the Supreme Court said that a Stromberg error should be held under the Brecht harmless error standard. And of course, that's why the appellant's arguments in the initial brief failed, because the initial brief only says Stromberg means reversal. We know that's not true. Under HedgePath, the Stromberg error looks to the Brecht harmless error standard. But in our recent case, Alvarado-Linares v. U.S., we were dealing with a Davis claim. And we cited two Beeman in that. Turning to the case at hand, we certified one issue for appeal. Well, whether Alvarado-Linares' firearms convictions are unconstitutional in light of Davis, and I'm paraphrasing a little bit. To resolve that question in his favor, Alvarado-Linares must bear the burden of showing that he's actually entitled to relief on the Davis claim. Meaning, he will have to show that his 924C convictions resulted from application of solely the now unconstitutional residual clause. We cite to Inrei Hamoud, we cite to Beeman. Sometimes this question can be resolved by a finding of historical fact. Sometimes the question must be resolved by reference to legal principles alone. Here, the parties agree, the answer turns on legal principles alone. So we have, in fact, in Alvarado-Linares, applied Beeman to a Davis claim in this situation, correct? I don't remember that case specifically, but based on your reading of it, that seems correct. Well, I was on the panel, but it was issued by this court. It's a published opinion on August 16th of this year. Okay. Thank you, Your Honor, for pointing that case out. And again, if the court has no further questions, I see I've passed my time. I'll rest on our briefs and ask the court to affirm. Thank you. Thank you. All right, Mr. Feldman, you have three minutes on rebuttal. Your Honors, a portion of the jury instructions reads that the defendant carried the firearm in relation to or possessed the firearm in furtherance of the crime of violence or the drug trafficking crime. Very clear, using the connector or referring to the predicate disjunctively just as language of the statute does. As further indication that the statute contemplates a single predicate, we sometimes see that the government charges multiple counts of 924C where there are multiple potential predicates. Judge Antoon has presided over such a case. United States v. Lewis, where the government charged two counts of 924C for two crimes of violence, with the underlying assumption that there would be one predicate linking up to each 924C count. We heard some potential concern from your honors about the similarity of the jury instructions in Parker. Why don't we just deal with Martin, who was Mr. Garrison, who had the exact same jury instructions. Martin was convicted of a separate firearm charge regarding a short-barrel Uzi that Mr. Garrison was not convicted of. But the greater point is that we need to look at the universe of evidence that the jury was considering when they reached the verdict with regard to each defendant. The government mentioned that there were many transcripts of calls and meetings between the defendants and the undercover ATF agent. The government admitted over 30 transcripts of such calls and meetings into evidence. Martin alone had 22 one-on-one independent communications with the undercover ATF agent. Mr. Garrison, by stark contrast, only attended two of the meetings during which he remained mostly silent. Okay, he ordered a lemonade. That was the extent of his speaking during one of them. There's nothing wrong with wearing a black shirt and a black hat. The prosecutor- But those are sufficiency arguments. To me, they don't go to the question that we have to answer, which is, did the jury only rely on a now invalid predicate? The government never tied the firearm to the intent to distribute aspect of the drug offenses. That's one of several ways. Doesn't the weight indicate that? I mean, there's legions of cases we've held that 15 kilos is a lot. You can't, you'd personally use that. Your Honor, the government had control of the case they presented. I would agree with you that if the government had made or emphasized that point, that might have been persuasive, but that's not what they did. The jury picked up what the government put down. This is a robbery. Final point, Mr. Garrison can show actual prejudice to demonstrate prejudice. A movement must show that the error alleged worked as actual and substantial disadvantage. During the Granda oral argument, Judge Marcus mentioned that the prejudice inquiry overlaps with the merits. We agree with his read of the law. Mr. Garrison received a consecutive sentence, mandatory minimum five years for his 924C count, very different from Granda's concurrent sentence for his 924O count. Mr. Garrison is currently serving that consecutive sentence. But given the overlap of the merits and the other details in our papers, we say holistically that our prejudice showing is broader than just the extended prison term because we realize in this court's recent Camacho opinion, the panel suggested that an extended prison term alone was not enough. We disagree with that. It also comports with the concurrence written by Joe Pryor and Judge Rosenbaum in In Ray Jones, finding manifest injustice for an extended prison term. Overall, we ask that this court reverse the denial of Mr. Garrison's 2255 motion remand with instructions to grant it. Thank you for your time. Thank you. Thank you both. We have the case under advisement.